UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| KAREN A. SHAFFER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: 4:06-CV-143-JVB-PRC |
| | ) | |
| AMERICAN RED CROSS, AMERICAN RED CROSS OF NORTHWEST INDIANA, and AMERICAN RED CROSS OF NORTHEAST INDIANA, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM, OPINION, & ORDER**

This matter is before the Court on the Motion for Partial Summary Judgment [DE 23] filed by Defendants American National Red Cross, American Red Cross of Northwest Indiana, and American Red Cross of Northeast Indiana (hereinafter "Defendants," "American National Red Cross," or "Red Cross") on June 29, 2007. Plaintiff Karen Shaffer filed a response [DE 36] on September 26, 2007, and Defendants filed a reply [DE 41] on October 26, 2007. Additionally, Plaintiff filed an objection to Defendants' reply [DE 43] on November 8, 2007. The issues have been fully briefed.

I. Procedural Background

Plaintiff filed her Complaint in the Newton Circuit Court on November 20, 2006, alleging that she was injured as a result of the negligence of the Defendants in performing a venapuncture for a routine blood donation on November 26, 2004. Plaintiff also alleges that this negligent venapuncture resulted in damages and bodily injuries to her right arm. Plaintiff seeks compensation for all damages she has incurred and which are allowable under Indiana law.

Defendants timely removed this action to the Northern District of Indiana on December 8, 2006. The Court has subject matter jurisdiction over the American National Red Cross pursuant to its charter, which is codified at 36 U.S.C. § 300105(a)(5).

II. Facts

On November 26, 2004, Plaintiff donated blood to the American National Red Cross at their mobile location in Kentland, Indiana.[1] According to Plaintiff, the Red Cross employee performing the venapuncture initially missed Plaintiff's vein, and Plaintiff stated that the employee moved the needle while it was in her arm three separate times (Shaffer Dep. at 82, 86). Plaintiff stated that when the needle was inserted, it felt different to her than on all of the other occasions before (Shaffer Dep. at 85). She stated that she felt "stinging, burning" and that the "pain was just excruciating" (Shaffer Dep. at 85-87, 95).

On June 2, 2005, Plaintiff began her treatment with orthopaedic surgeon Dr. Steven Novotny. She reported that she had experienced discomfort with the blood draw on November 26, 2004. Plaintiff reported symptoms of "pain, ecchymosis, swelling, and loss of sensation" in her right arm and "nocturnal related numbness and tingling in the hands, and aches and pains in the arm" (Novotny Dep., p. 16, ll. 8-17). Dr. Novotny examined Plaintiff at this initial appointment and reviewed a May 12, 2005 electromyography ("EMG") report by Dr. Scott Hoyer. (Novotny Dep., p. 16, ll. 8-17). The EMG report did not disclose any problems with the median nerve at the pronator level, but revealed conduction velocity delays in the median nerve at the carpal tunnel, or a compression neuropathy of the right median nerve at the wrist (Novotny

---

[1]Kentland, Indiana is located in Newton County, Indiana.

Dep., p. 32, l. 25; p. 33, ll. 1-8; p. 35, ll. 9-13). After completing a physical examination and reviewing the aforementioned EMG report, Dr. Novotny diagnosed Plaintiff with carpal tunnel syndrome, possible pronator syndrome in her right arm with some cutaneous nerve irritation, and paresthesias of the volar forearm (Novotny Dep., p. 36, ll. 8-21). Dr. Novotny initially treated Plaintiff's carpal tunnel syndrome with a cortisone shot. However, when the cortisone shot failed to alleviate Plaintiff's symptoms, Dr. Novotny recommended surgery; Dr. Novotny performed Plaintiff's carpal tunnel release and pronator release surgery on June 27, 2005 (Novotny Dep p. 54; p. 56-57, ll. 1 and 25).

III. <u>Standard of Review</u>

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The moving party bears the burden of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that the moving party believes demonstrate an absence of genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990). *See also Beard v. Whitley County REMC*, 840 F.2d 405,

3

410 (7th Cir. 1988)(stating that "a party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial."). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment is proper.

IV. Discussion

Defendants initially sought partial summary judgment on the issue of Plaintiff's claim for any and all damages related to her injuries to the median nerve at the carpal tunnel and pronator regions, including but not limited to carpel tunnel syndrome, pronator syndrome, and her symptoms of numbness, tingling, burning and pain in her right arm. Defendants' Motion for Partial Summary Judgment at 9. In response, Plaintiff stated, "It is clear from Dr. Novotny's deposition testimony that he believes the carpal tunnel syndrome he diagnosed was not caused by the needle stick in this case. Plaintiff does not disagree with this assessment, and has never claimed that the needle stick caused CTS [carpal tunnel syndrome]." Plaintiff's Response at 9. After reviewing Plaintiff's response, Defendants withdrew the "motion for partial summary judgment on the issue of proximate causation of damages on all other damages issues at this time, and reserve[d] its right to bring a motion for summary judgment in the future." Defendants' Reply at 2. Accordingly, the only issue presently before the Court is whether Plaintiff's carpal tunnel syndrome is related to the venapuncture at issue. *Id*.

Defendants presently seek a finding that Plaintiff's carpal tunnel syndrome is unrelated to the venapuncture at issue. Defendants also seek judgment in their favor on "any medical issues, disability, pain and suffering, lost income, or any other form of damages arising out of

4

Plaintiff's carpal tunnel syndrome, including, but not limited to, entry of judgment in Defendant's favor on medical expenses relating to Plaintiff's carpal tunnel release surgery performed on June 27, 2005, doctor's visits, physical therapy sessions, and any other medical care provided to Plaintiff in treatment of her carpal tunnel syndrome." *Id*.

Plaintiff objects, stating that the "question of reasonableness and necessity of the diagnosis and treatment of Plaintiff subsequent to the negligent venapuncture in this case has not been litigated or briefed." Plaintiff's Objection at 2. Plaintiff further contends that "[e]ven it is true that Plaintiff's CTS is not causally related to the venapuncture, it does not necessarily follow that the expenses "relating to" the carpal tunnel release surgery are not recoverable in this case." *Id*. The Court agrees. Accordingly, because there are material issues of fact concerning the reasonableness and necessity of the diagnosis and treatment of Plaintiff subsequent to the venapuncture in question, and because there are questions of fact regarding whether it was reasonable or necessary to attempt the course of treatment undertaken by Dr. Novotny, Defendants' Motion for Partial Summary Judgment is **DENIED**.

V. Conclusion

Based on the foregoing, Defendants' Motion for Partial Summary Judgment is **DENIED**.

**SO ORDERED on February 13, 2008.**

                                              s/ Joseph S. Van Bokkelen
                                              **JOSEPH S. VAN BOKKELEN**
                                              **UNITED STATES DISTRICT JUDGE**